SLT:LHE
F.#2015R01671

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**15 MISC 2492**

IN THE MATTER OF THE SEARCH OF
INORMATION ASSOCIATED WITH THE
CELLULAR TELEPHONE ASSIGNED
CALL NUMBER (718) 663-1215 WITH
INTERNATIONAL MOBILE
SUBSCRIBER IDENTITY / ELECTRONIC
SERIAL NUMBER 310410715833866
THAT IS STORED AT PREMISES
CONTROLLED BY AT&T WIRELESS

SEARCH WARRANT APPLICATION FOR
HISTORICAL CELLSITE INFORMATION

Case No. _____

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, FRANCIS DONATO first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number (718) 663-1215, 310410715833866 ("the SUBJECT PHONE"), that is stored at premises controlled by AT&T a wireless telephone service provider headquartered in Dallas, Texas. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require AT&T to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation and have been for approximately seven years. I am responsible for conducting and assisting in investigations into the activities of drug trafficking organizations. These investigations are conducted both in an undercover and overt capacity. I have participated in investigations involving search warrants and arrest warrants. As a result of my training and experience, I am familiar with the techniques and methods of operation used by individuals involved in criminal activity to conceal their activities from detection by law enforcement authorities. I have participated in investigations involving the use of electronic surveillance and location data.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841 and 846 have been committed by JAMAL BETHEA. There is also probable cause to search the information described in Attachment A for evidence and instrumentalities of these crimes as further described in Attachment B.

## PROBABLE CAUSE

5. Since approximately June 2014, DEA agents along with Special Agents of the Federal Bureau of Investigation ("FBI") have been investigating a suspected drug trafficking organization ("DTO") operating in New York and Pennsylvania, among other locations.

6. Pursuant to this investigation, JAMAL BETHEA was identified as a cocaine trafficker operating in Queens, New York. Specifically, BETHEA was intercepted over a judicially authorized wiretap negotiating narcotics transactions with a co-conspirator, an individual named DONALD ANTHONY SOTO. The wiretap was installed on a mobile telephone used by SOTO and BETHEA was intercepted using the SUBJECT TELEPHONE.

7. For example, On April 6, 2015, at approximately 11:39 a.m., BETHEA called SOTO using the SUBJECT TLEPEHONE. He explained that he was "still missing a couple of dollars," but that he was hoping to get sometime later that day. SOTO wondered how much BETHEA was going to bring to SOTO and BETHEA replied "33." SOTO advised BETHEA to wait until he got the whole thing so he could give it to him in one shot. BETHEA explained he wasn't sure he could get the whole amount today, and that he was trying to work something out with "these niggas but they are projects" and BETHEA didn't want them to "get empty." BETHEA then explained that when someone is about to get low, they expect BETHEA to get them "ready" again. SOTO replied that he understood they wait for BETHEA to come through with more before they get empty, but that the problem is SOTO's man. BETHEA then added that "they need to get a little something . . . nothing crazy." He stated that he is only dealing with "this dude" right now, and BETHEA is trying to help him get on his feet.

8. Similarly, on April 20, 2015, at approximately 2:38 p.m., BETHEA called SOTO and assured him that he will be "done" either that night or the next day. He stated that he didn't want to talk much over the phone, and explained that "things are slow . . . the niggas are not selling, and they still owe some." He explained that he was waiting to collect

3

more from the "niggas." BETHEA complained that he is hoping to have a "steady flow," but right now he doesn't have anybody. SOTO asks BETHEA for the total balance, and BETHEA replied that he owes SOTO "17" and "66."

9. During the course of the wiretap, several calls were intercepted in which BETHEA discussed traveling to deliver narcotics proceeds to SOTO or meeting with SOTO in various locations.

10. On June 24, 2015, an indictment was filed in this District charging BETHEA with conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846, in or around and between June 2014 through April 2015. On August 27, 2015, BETHEA was arrested in Queens, New York. Following his arrest the defendant agreed to be interviewed. He was read his Miranda rights and waived them orally and in writing. Following that, BETHEA acknowledged using the telephone number associated with the SUBJECT TELEPHONE, but denied selling cocaine.

11. Cell-site location information for the SUBJECT TELEPHONE will constitute evidence of narcotics offenses committed by BETHEA as it will likely confirm dates and locations of narcotics-related meetings between BETHEA and his co-conspirators that were discussed in intercepted calls.

12. In my training and experience, I have learned that AT&T a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector

4

records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

13. Based on my training and experience, I know that AT&T can collect cell-site data about the SUBJECT PHONE. I also know that wireless providers such as AT&T typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes. Specifically, I know that AT&T has advised law enforcement that it retains records of cell-site information for a five year period.

14. Based on my training and experience, I know that wireless providers such as AT&T typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as AT&T typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course

5

of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

### AUTHORIZATION REQUEST

15. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

16. I further request that the Court direct AT&T to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on AT&T who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Francis Donato
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on 12/16, 2015

Honorable Robert M. Levy
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

6

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number (718) 663-1215, 310410715833866 ("the SUBJECT PHONE"), that is stored at premises controlled by AT&T a wireless telephone service provider headquartered in Dallas, Texas.

## ATTACHMENT B

### Particular Things to be Seized

I. **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period January 1, 2015 through April 30, 2015:

    a. The following information about the customers or subscribers of the Account:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

2

      vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

      viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

      i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

      ii. information regarding the cell towers and sectors through which the communications were sent and received.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of violations of 21 U.S.C. § 846 involving JAMAL BETHEA during the period January 1, 2015 through April 30, 2015.

3